IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUSAIN SALAH,
    Plaintiff,                               Case No.
                                              Honorable

    v

THE MUSEUM OF
CONTEMPORARY ART, DETROIT,
a domestic nonprofit corporation,

    Defendant.

---

Law Offices Jeffrey S. Burg, Esq.
Jeffrey S. Burg (P38381)
Attorney for Plaintiff
16291 W. 14 Mile Road, Ste. 24
Beverly Hills, MI  48025
(248) 227-5027
Jburg@comcast.net
248-856-1258 (fax)

**COMPLAINT AND DEMAND FOR JURY**

Plaintiff HUSAIN SALAH complains against Defendant THE MUSEUM OF CONTEMPORARY ART, DETROIT ("MOCAD")as follows:

1. This is an action to enforce rights arising out of Plaintiff's employment relationship with Defendant, under Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq and 42 USC 2000e(5)(E)(3) (Title VII), and the Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq. and MCL 37.2701 (ELCRA).

2. This Court has jurisdiction over Plaintiff's federal claims pursuant to 42 USC 2000e-5 (Title VII claims).

3. This Court may also exercise pendant jurisdiction over Plaintiff's state law claims arising under the statutes of the State of Michigan and its common law, and which arise from a common nucleus of operative fact pursuant to 28 USC 1367.

4. Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 USC 1391(b), wherein Plaintiff resides, Defendant regularly conducts business and where the actionable wrongful conduct occurred.

5. Plaintiff is a resident of the State of Michigan in the County of Wayne.

6. Defendant MOCAD is a domestic nonprofit corporation that maintains its place of business in the Eastern District of Michigan and is subject to the jurisdiction of this court.

7. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

**Background Facts**

8. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

9. Plaintiff was born in the country of Egypt and is a member of the African and/or Middle Eastern race.

10. Plaintiff is Muslim by religious faith.

11. Plaintiff became a citizen of the United States in 2005.

12. Plaintiff was hired by Defendant in October, 2018, as the web and digital media manager for MOCAD.

13. For the first two years of his employment, Plaintiff excelled. He delivered a high-quality new website, a new online store, a healthy and active online following for MOCAD on social media, a social media store and a new document server for the museum.

14. At the onset of the pandemic (March, 2020),Plaintiff was deemed an essential worker and given a bonus for stellar performance during the pandemic.

15. Beyond his technical work, Plaintiff also curated the techno brunch series known as "This morning a DJ saved my Life," produced numerous live stream public programming events, and performed the position of sound engineer and in-house DJ for MOCAD when needed.

16. In 2020, however, Plaintiff discerned a pattern of being excluded, by colleagues and by superiors, from important meetings and discussions, of being needlessly subordinated, and of unfairly not being credited for the consistent contributions he was making to the museum's welfare.

17. In one instance, Plaintiff was assigned to report to Zeb Smith, a white, under-qualified man who did not hold a college degree and who had multiple documented angry outbursts in the workplace which were sometimes violent. On at least one occasion, Smith literally threw hardware and working tools across the gallery floor and expressed discontent in a fashion that can only be described as a tantrum.

18. Upon information and belief, a guest curator later wrote to MOCAD's board that he had witnessed angry and harmful behavior of Smith. Smith was never investigated or disciplined by MOCAD.

19. In one phone call, Smith told Plaintiff "I am your superior and you will do what I say."

20. On June 26, 2020 Plaintiff met with and told his supervisor he was experiencing discrimination; Plaintiff then filed a letter of complaint with MOCAD on July 1, 2020, specifically referencing workplace discrimination against him as a "Brown man." Three months later, Plaintiff would be terminated.

21. After filing his discrimination complaint on July 1, 2020, Plaintiff waited two months before he received a single response from MOCAD.

22. While he waited, Plaintiff wrote to MOCAD's board chairperson several times asking if anyone had looked into his complaint of July 1.

23. In the meantime, on August 1, 2020, Plaintiff obtained his personnel file; there were no write-ups or criticisms of any kind inside.

24. On August 25, 2020, Cate Strumbos, a member of MOCAD's board, met with Plaintiff in an abbreviated Zoom video teleconference. At the outset, Strumbos accused Plaintiff of "insubordination" because he had insisted on the meeting. At one point, when Plaintiff had stated that he had been deprived of opportunities to learn, Strumbos replied, "Why do you feel like you deserve to learn?"

25. One week later, on September 1, 2020, Plaintiff received a letter from Strumbos stating that the board could not substantiate Plaintiff's claim of racial harassment.

26. At the same time, Plaintiff was hearing that Defendant's HR manager, "Marie," had taken to openly disparaging Plaintiff, outside his presence, at the museum. She set a perception of Mr. Salah as a man of color with an angry disposition.

27. After three more weeks, Defendant terminated Plaintiff's employment based, allegedly, on "harsh" or "insubordinate" comments Plaintiff made to colleagues and management.

28. Plaintiff denies that the alleged comments were "harsh" or "insubordinate" in any way.

29. Defendant easily overlooked much worse behavior in its white, American-born, non-Muslim employees.

30. Defendant's investigation of Plaintiff's complaint was perfunctory no meaningful actions were taken to allay Plaintiff's real concerns; instead Defendant delayed addressing the issues and punished Plaintiff as the wrongdoer for speaking up in the workplace.

31. Plaintiff filed an EEOC charge against Defendant alleging race, religion, national origin, and retaliation discrimination in the disparate treatment of and discharge of Plaintiff's employment.

32. Plaintiff received a right to sue letter from the EEOC; this action is being filed within the 90 day statute of limitations for federal actions after completion of processing by the EEOC.

## Count I- Title VII, National Origin Discrimination

33. Plaintiff realleges all paragraphs above as though fully set forth herein.

34. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of Title VII, 42 USC 2000e-2(a)(1).

35. Plaintiff's national origin was at least one factor that made a difference in Defendant's decision to treat Plaintiff differently and to terminate his employment.

36. Had Plaintiff been a person of different national origin he would not have been treated differently or terminated.

37. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of national origin and acted in accordance with that predisposition in treating Plaintiff differently and in terminating his employment.

38. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

39. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of retirement health care benefits, severance benefits; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

## Count II – Violation of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq - National Origin

40. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

41. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

42. Plaintiff's national origin was at least one factor that made a difference in Defendant's decision to treat Plaintiff differently and to terminate his employment.

43. Had Plaintiff been a person of different national origin he would not have been treated differently or terminated.

44. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of national origin and acted in accordance with that predisposition in treating Plaintiff differently and in terminating his employment.

45. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

46. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of retirement health care benefits, severance benefits; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

## Count III: Title VII- Race Discrimination

47. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

48. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of Title VII, 42 USC 2000e-2(a)(1).

49. Plaintiff's race was at least one factor that made a difference in Defendant's decision to treat Plaintiff differently and to terminate his employment.

50. Had Plaintiff been a person of different race he would not have been treated differently or terminated.

51. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition in treating Plaintiff differently and in terminating his employment.

52. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

53. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of retirement health care benefits, severance benefits; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

## Count IV – Violation of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq - Race

54. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

55. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

56. Plaintiff's race was at least one factor that made a difference in Defendant's decision to treat Plaintiff differently and to terminate his employment.

57. Had Plaintiff been a person of different race he would not have been treated differently or terminated.

58. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition in treating Plaintiff differently and in terminating his employment.

59. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

60. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of retirement health care benefits, severance benefits; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

## Count V- Title VII-- Religion

61. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

62. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of Title VII, 42 USC 2000e-2(a)(1).

63. Plaintiff's religion was at least one factor that made a difference in Defendant's decision to treat Plaintiff differently and to terminate his employment.

64. Had Plaintiff been a person of a different religion he would not have been treated differently or terminated.

65. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of religion and acted in accordance with that predisposition in treating Plaintiff differently and in terminating his employment.

66. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

67. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of retirement health care benefits, severance benefits; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

## Count VI – Violation of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq - Religion

68. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

69. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

70. Plaintiff's religion was at least one factor that made a difference in Defendant's decision to treat Plaintiff differently and to terminate his employment.

71. Had Plaintiff been a person of a different religion he would not have been treated differently or terminated.

72. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of religion and acted in accordance with that predisposition in treating Plaintiff differently and in terminating his employment.

73. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

74. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of

retirement health care benefits, severance benefits; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

### Count VII- Title VII- Retaliation

75. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

76. To the extent the adverse employment actions identified in the allegations above were motivated by Plaintiff's complaints of discrimination, Defendant has engaged in unlawful employment discrimination in violation of Title VII.

77. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

### Count VIII- ELCRA- Retaliation

78. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

79. To the extent the adverse employment actions identified in the allegations above were motivated by Plaintiff's complaints of discrimination, Defendant has engaged in unlawful employment discrimination in violation of Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

80. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

Respectfully submitted,

/s/ Jeffrey S. Burg

Jeffrey S. Burg
Dated: May 31, 2023                Attorney for Plaintiff


## JURY DEMAND

Plaintiff demands a trial by jury of all appropriate claims as asserted in this Complaint.

Respectfully submitted,

/s/ Jeffrey S. Burg

Jeffrey S. Burg
Dated: May 31, 2023                Attorney for Plaintiff